IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

PATRICIA SPECK,                )
                               )
            Plaintiff,         )
                               )
v.                             )        No. 07-2019-STA
                               )
CITY OF MEMPHIS,               )
                               )
            Defendant.         )

_____

## ORDER GRANTING DEFENDANT'S  MOTION FOR SUMMARY JUDGMENT
_____

Before the Court is Defendant City of Memphis' Motion for Summary Judgment (D.E. #
66) filed on October 14, 2008.  Plaintiff responded in opposition on December 10, 2008.  For the
reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Patricia Speck is a former employee of Defendant City of Memphis
("Defendant").  Plaintiff alleges that Defendant engaged in discriminatory conduct against her on
the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA") and in
retaliation for her engaging in protected activity.  Compl. ¶ 9.  Plaintiff further contends that
Defendant's discrimination created a hostile work environment such that Plaintiff began to suffer
health problems and was forced to resign her position with the City.  Compl. ¶¶ 13-15.

Plaintiff served as the Coordinator of Nursing Services at the Memphis Sexual Assault
Resource Center ("MSARC") from December 29, 1989 until May 27, 2005.  Compl. ¶ 8; Ex. 4
Gray Dep., June 27, 2008.  MSARC is a city agency within the Division of Public Services and

Neighborhoods ("the Division"). As Coordinator of Nursing Services, Plaintiff reported to the manager of MSARC who in turn reported to the deputy director and director of the Division. Def.'s Statement of Facts ¶ 2. On two occasions, from March 2002 to June 2002 and again from November 2003 to February 2004, Plaintiff served as Interim Manager of MSARC while Defendant was seeking a permanent manager. *Id.* at ¶ 3.

According to Plaintiff, she began to encounter problems at work while Ann Kenworthy ("Kenworthy") served as manager of MSARC from June 2002 to September 2003. Pl.'s Resp. 5.[1] Plaintiff contends that Kenworthy had no background in medicine or nursing. *Id.* at 6. Plaintiff states without elaboration that as MSARC manager Kenworthy began "making changes regardless of the consequences." *Id.* At this time, the Division was led by Deputy Director Keenon McCloy ("McCloy") and Director Donnie Mitchell ("Mitchell"). Def.'s Statement of Facts at ¶ 4. Plaintiff complains that on October 3, 2003, she was summoned to a fact-finding hearing without notice before Kenworthy, McCloy, and Mitchell, her immediate supervisors. Pl.'s Resp. at 6.[2] At this hearing Plaintiff was questioned about her allegedly making policy for the City, pursuing her graduate studies, her clinical work at the Medical Examiner's Office, and an upcoming honorary meeting at the White House in recognition of her work with the International Association of Forensic Nursing ("IAFN"). *Id.* at 7. Plaintiff reports that Mitchell

---

[1] Plaintiff's brief states that Kenworthy served as MSARC manager until September 2003. However, Plaintiff goes on to describe a meeting involving Kenworthy from October 2003. In her deposition, Plaintiff testified that Kenworthy left MSARC November 1, 2003. See Speck Depo. 74:20-22.

[2] Plaintiff has testified that en route to the meeting her husband received a call from a friend at the Mayor's office informing him that Plaintiff was about to be fired at the meeting. Pl. Resp. at 7.

was "rude and contemptuous" and made Plaintiff feel "demeaned, belittled, and harassed." *Id.* No further disciplinary action occurred as a result of the meeting.

In a second incident while Kenworthy was manager of MSARC, Plaintiff claims that Ricci Helmon, the Coordinator of Community Services at MSARC, verbally and physically attacked Plaintiff during a staff meeting. *Id.* at 8. According to Plaintiff, neither Kenworthy nor McCloy intervened despite the fact that both were present. *Id.* Plaintiff states in her Response brief that she "complained of the harassment, but nothing came of it." *Id.* This assertion is not supported in the record, however, where Plaintiff testified at her own deposition that McCloy investigated the matter and took disciplinary action against Helmon. Speck Depo. 73:16-74:9. At a subsequent staff meeting, Mitchell told the full MSARC staff that he would not "entertain any more complaints of hostility." *Id.* at 9.[3] It was some time after Mitchell's comment that Plaintiff received her first ever reprimand though the record is not clear about what led to the reprimand. *Id.*

Plaintiff further relates other incidents of harassment to Kenworthy's tenure. Plaintiff alleges that Kenworthy pressured her to hire one of Kenworthy's friends as a staff nurse despite the fact that Kenworthy's friend was not qualified for the job. *Id.* at 9-10. Plaintiff also contends that the contents of her computer were erased apparently when someone attempted to install a new operating system on the device. *Id.* According to Plaintiff, she was the only MSARC staff member to have the software installed despite her explicit instructions that no one

---

[3] The record on this point is ambiguous because it is not clear to the Court when Mitchell made this statement and in what context it was made. See Speck Depo. 72:9-73:5. Plaintiff's Response brief details the staff meeting where Plaintiff states she was attacked. However, it appears to the Court that what follows is Mitchell's memory of the October 3, 2003-meeting, not the staff meeting where Mitchell made his "no more complaints" comment.

was to touch her computer.  *Id*.  Plaintiff describes these incidents as "barriers" for her in the workplace.  *Id*.

When Kenworthy resigned as MSARC manager in September or October 2003, Plaintiff was named Interim Manager, her second stint in that position, while the City sought a replacement for Kenworthy.  Although Kenworthy was no longer at MSARC and Mitchell retired in December 2003, Plaintiff alleges that the harassment continued.  As Interim Manager Plaintiff reported to the new Deputy Director Michael Gray ("Gray") and to McCloy who had been promoted to Director of the Division after Mitchell's retirement in January 2004.  Gray Depo. 32:22-24.  Shortly thereafter Gray addressed an EEO complaint filed by an MSARC employee against Renee Brown ("Brown"), the MSARC Coordinator of the Rape Crisis Center.  Gray Depo. 38:17 - 39:18; Pl. Resp. 11-12.  Gray met with the complaining employee, Brown, and Plaintiff to address the situation and followed up that meeting with a memorandum.  Pl. Resp. 11-12.  Both the meeting and the follow-up memo addressed the alleged misconduct of Brown.  *Id*. at 12.  There were no allegations of misconduct directed at Plaintiff.  *Id*.  According to Defendant, Plaintiff admitted that she had difficulty managing Brown.  Gray Depo. 46:1-5; Def.'s Mot. Summ. J. 4.  As a result, on February 12, 2004, Gray issued Plaintiff a written reprimand for failure to take action to correct Brown's behavior, a disciplinary action which Plaintiff considered unjustified and to which she objected.  Pl. Resp. 12.

Later in February 2004, Julie Coffey ("Coffey") was hired as Kenworthy's permanent replacement as manager of MSARC.  Plaintiff resumed her duties as MSARC Coordinator of Nursing Services at that time.  Plaintiff contends that she continued to be "targeted" during Coffey's tenure.  Coffey questioned Plaintiff about the existence of nursing protocols at

MSARC, which according to Plaintiff had existed since 1992. *Id.* at 10. Plaintiff also alleges that Coffey threatened to take legal action against her for unspecified reasons. *Id.* at 12-13.

According to Plaintiff, it was the increasingly stressful pattern of harassing behavior at work that damaged her health and forced her to take leave of absence. *Id.* at 13. In July 2004, Plaintiff was granted intermittent medical leave under the Family and Medical Leave Act ("FMLA") due to a chronic heart condition. Def.'s Statement of Facts ¶ 5. By her physician's orders, Plaintiff was to work two days per week for three to four months. *Id.* at ¶ 6. Although Defendant expected Plaintiff to return to full duty on or about October 1, 2004, Plaintiff provided a note on October 18, 2004, from her treating physician stating that Plaintiff was unable to perform her responsibilities as Coordinator of Nursing Services at MSARC. *Id.* at ¶ 9. On January 13, 2005, Plaintiff's physician completed an FMLA Certification of Health Care Provider form that Plaintiff was "fully disabled" and unable to continue in her position with MSARC. *Id.* at ¶ 10. Then on March 7, 2005, Plaintiff's physician wrote on Plaintiff's behalf to request "full disability regarding her job as nursing coordinator." *Id.* at ¶ 11. By this point Plaintiff contemplated retirement as well and did not return to work. *Id.* at ¶ 12.

While on medical leave and prior to her resignation with the City, Plaintiff was subject to two additional disciplinary actions in the form of fact-finding hearings related to her employment with MSARC. The first incident charged Plaintiff with making unauthorized budgetary outlays and misrepresenting herself as the "Interim Director" of MSARC in a professional publication. *Id.* at ¶ 13.[4] After a hearing was conducted by then MSARC manager

---

[4] The notice of fact-finding hearing was issued on September 16, 2004, and the City's determination letter was dated September 29, 2004. *Id.* at ¶¶ 13-14.

Coffey in September 2004, it was determined that Plaintiff had not violated city policy. *Id*. at ¶ 14. The second incident stemmed from Plaintiff's attending a professional conference for the IAFN in Chicago in October 2004 while she was on continuous medical leave. *Id*. at ¶ 15. City policy required Plaintiff to inform her supervisor of her "convalescent location" at all times while on sick leave and to receive permission to travel from that location. *Id*. at ¶ 18. Plaintiff did not receive prior permission to travel to attend the IAFN conference in Chicago even though she was still on continuous sick leave at the time. *Id*. at ¶ 16. Following the fact-finding hearing in November 2004, the City concluded that Plaintiff had violated the sick leave policy, and Plaintiff chose not to appeal the decision. *Id*. at ¶ 19.

Finally, on May 23, 2005, Plaintiff informed Gray that she would be traveling for personal reasons and for another IAFN conference. *Id*. at ¶ 20. In response Gray informed Plaintiff that she had not sought prior approval for those plans and that based on the information provided, any request would be denied. *Id*. Furthermore, Gray warned another violation of the City's sick leave policy would result in additional disciplinary action including termination. *Id*. On May 25, 2005, Plaintiff resigned her post with MSARC. *Id*. at ¶ 22.

The City argues that Plaintiff cannot make out a *prima facie* case of age discrimination or retaliation on account of complaints of age discrimination, and so the City is entitled to summary judgment. First, Plaintiff has no direct evidence of age discrimination, and so must make out a *prima facie* case showing (1) that she was at least 40 years old at the time of the alleged discrimination, (2) that she was subjected to an adverse employment action, (3) that she was otherwise qualified for the position, and (4) that she was replaced by a younger worker. Here the City argues that Plaintiff cannot show that she was subjected to an adverse employment action

within the relevant statute of limitations.  Because Plaintiff filed her charge with the EEOC on February 17, 2006, she must allege an adverse employment action that occurred within 300 days prior to her filing.  The only possible adverse action is the termination of her employment with the City; however, Plaintiff actually resigned her job voluntarily.  Therefore, she cannot establish that she suffered an adverse employment action.

Consequently, the City contends that Plaintiff must prove that her voluntary resignation amounted to constructive discharge.  Constructive discharge requires a showing (1) that workplace conditions were so difficult that a reasonable person would feel compelled to resign, and (2) that the employer intended to cause the employee to resign or that resignation was a reasonably foreseeable consequence of the employer's actions.  The City argues that Plaintiff must do more than show that she was unhappy in her job and even that the City discriminated against her.  Plaintiff must show that there were aggravating factors.  The City claims that Plaintiff has only alleged that the City targeted her without more specific allegations.  Further, Plaintiff had been on medical leave and out of the workplace for six months prior to her resignation, so it is unclear how she could allege that her working conditions led to her resignation.  Nor can Gray's decision to inform Plaintiff that her personal travel and travel to attend an IAFN conference were without authorization amount to "intolerable conditions."  Gray was simply enforcing the City's sick leave policy.  Plaintiff cannot offer any proof that the City acted with the intention of causing Plaintiff to resign.  Therefore, Plaintiff cannot show that she was constructively discharged and cannot make out her *prima facie* case of age discrimination.

The City argues in the alternative that even if Plaintiff could make out a *prima facie* case of age discrimination that the City had a legitimate, non-discriminatory reason for its actions.

The City did not take adverse action against Plaintiff because Plaintiff elected to resign her position. With respect to Plaintiff's requests to travel, the City acted in accordance with its policy when it denied Plaintiff's convalescent location just prior to her resignation. The City also contends that the fact-finding hearings involving Plaintiff complied with city policy and procedure and are outside the 300-day limitations period.

The City argues that assuming Plaintiff could make out a *prima facie* case and the City could establish legitimate, non-discriminatory reasons, then Plaintiff must show that the City's reasons were pretext, which she cannot. Plaintiff has stated that she did not know she was being discriminated against on the basis of her age until several months after her resignation. According to the City, Plaintiff has only her own subjective beliefs, which are irrelevant to showing pretext. Plaintiff has suggested that her temporary replacement as coordinator of nursing services at MSRAC, Rachel Copeland, was given preferential treatment. The City avers that Copeland was the only staff member willing to take the job while it searched for a permanent replacement and that Copeland received part-time pay for full-time duties. While Copeland is younger than Plaintiff, there is no evidence that she was similarly situated to Plaintiff or received more favorable treatment on account of her age. Plaintiff contends that Copeland received more favorable treatment from the City because the City permitted Copeland to attend an IAFN meeting while it denied Plaintiff permission to attend a different IAFN meeting. However, there is no evidence that Copeland was on medical leave at the time of her travel; whereas, Plaintiff was on continuous medical leave and required permission from the Division to travel. Plaintiff further admits that she cannot identify one city employee who like her was on medical leave but was allowed to attend a professional meeting. Plaintiff has no

other evidence of age discrimination. In fact, according to the City, Plaintiff's permanent replacement as MSARC's coordinator of nursing services was actually six months older than Plaintiff.

As for Plaintiff's allegation of a hostile environment, the City argues that Plaintiff cannot make out a claim for hostile environment age discrimination. In order to establish that she suffered hostile environment age discrimination, Plaintiff must show (1) that she is 40 years old or older, (2) that she was subjected to harassment, through either words or actions, based on age, (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment, and (4) there is some basis for liability on the part of the employer. According to the City, Plaintiff cannot show that she was the subject of harassment on the basis of her age. The City characterizes Plaintiff's problems with her managers as "personality conflicts," which are not actionable under ADEA. The "targeting" Plaintiff complains of has no connection with her age.

Even if Plaintiff could make out a *prima facie* case for hostile environment, the City contends that it is entitled to the affirmative defense that it took reasonable steps to prevent age discrimination and that Plaintiff failed to take advantage of those corrective actions.[5] In the context of age discrimination, the City argues that its EEO policy includes procedures for employees to file complaints about violations of the policy with the City EEO Office, the Tennessee Human Rights Commission, or the EEOC. In this case Plaintiff took advantage of none of these options. Plaintiff never complained to any manager about her perceptions of

---

[5] Defendant cites the Supreme Court cases of *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) and *Faragher v. City of Boca Raton*, 524 775, 807-08 (1998) for this affirmative defense.

harassment on the basis of her age.

Finally, the City contends that Plaintiff has failed to make out a *prima facie* case for retaliation. Plaintiff did not engage in any protected activity under the ADEA, specifically, opposition to a practice prohibited by the ADEA. While Plaintiff has averred that she made several uncorroborated complaints about her write-ups, fact-finding hearings, general hostility, and physically intimidating behavior, none of these incidents were related to her age. Likewise, Plaintiff cannot establish that she suffered an adverse employment action. The only employment action that occurred within the 300-day limitations period was Plaintiff's resignation. The denial of Plaintiff's request to change her convalescent location was not an adverse action, nor was Gray's statement to Plaintiff that her travel would lead to further disciplinary actions including termination.

In response, Plaintiff argues first that she can make out her *prima facie* case for age discrimination under the ADEA. More specifically, Plaintiff contends that her constructive discharge is a question of material fact which precludes summary judgment. Plaintiff believes that she can prove that Defendant constructively discharged her and so she suffered an adverse employment action. Plaintiff argues that Kenworthy, Mitchell, Coffey and Gray all acted to create working conditions which a reasonable person would find intolerable. In particular Plaintiff cites the conduct of Coffey and Gray to establish that she was subjected to hostile working conditions and that Defendant acted intentionality to force her to resign. Plaintiff argues that there was no delay in her resignation in light of the fact that the harassing conduct had existed for some time and had forced her to take medical leave. In fact, there was only a span of five days between Gray's denial of her travel request and her resignation. Plaintiff

contends that this presents another factual issue for a jury to consider.[6]

As for her claim of hostile work environment on the basis of her age, Plaintiff argues that she can prove each element of the cause of action. Plaintiff believes that the harassment she faced was both severe and pervasive. The Court must consider the totality of the circumstances leading up to Plaintiff's resignation rather than viewing each incident in isolation. Furthermore, if any event that established the existence of the hostile environment took place within the 300 day filing period, then Plaintiff contends that the Court must consider all of the events which went to show the hostile environment even those falling outside the 300 day period. As for Defendant's affirmative defenses, Plaintiff alleges that she acted promptly to file her charge as soon as she discovered that she was the victim of the harassment due to her age. Plaintiff also argues that she consistently brought the harassing behavior to the attention of her superiors but to no effect. None of her complaints were referred to the City's EEO office or investigated.

Finally, Plaintiff contends that her retaliation claim should also survive Defendant's Motion for Summary Judgment. Plaintiff admits that her complaints were not made to the EEOC but were internal complaints made to her supervisors within the Division. Therefore, her complaints were protected activity for purposes of the ADEA. Plaintiff argues that Defendant used disciplinary actions to retaliate against her every time she made a complaint. Whether the retaliatory conduct was serious enough to deter a reasonable worker from protected activity is question of fact for the jury, not a matter of summary judgment.

---

[6] Without any citation to authority, Plaintiff alleges another possible issue of fact that Gray's denial of her travel request was an adverse employment action for purposes of making out her *prima facie* case.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[7]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[8] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[9] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[10] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[11] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[12]

Summary judgment must be entered "against a party who fails to make a showing

---

[7] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[8] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[9] *Celotex*, 477 U.S. at 324.

[10] *Matsushita*, 475 U.S. at 586.

[11] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[12] *Id.* at 251-52 (1989).

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[13]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[14]  Finally, the "judge may not make credibility determinations or weigh the evidence."[15]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[16]

## ANALYSIS

### I.Timeliness

Plaintiff has alleged three different forms of age discrimination against Defendant all pursuant to the ADEA: disparate treatment on the basis of her age, hostile work environment, and retaliation.  Where alleged unlawful practices including discrimination, hostile work environment, and retaliation occur in a "deferral state" like Tennessee, which has enacted its own laws prohibiting discrimination in employment, the plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act.[17]  Therefore, the Court must determine whether Plaintiff has made a timely charge with the EEOC as to each of her separate theories of

---

[13] *Celotex*, 477 U.S. at 322.

[14] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[15] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[16] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

[17] *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001).  Title VII has what the Sixth Circuit has labeled "a dual statute of limitations," one for deferral states and a general 180-day limitations period for every other state.  *Id*.

age discrimination and as to each alleged discriminatory act.

As for discrete acts of discrimination including disparate treatment and retaliation, the Supreme Court has explained that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"[18] Furthermore, each such act "'occurred' on the day that it 'happened.'"[19]  Accordingly, only those discrete acts that occurred within 300 days of the filing of an EEOC charge are actionable.[20]  In other words, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."[21]  Discrete acts falling outside the 300-day filing period are time-barred even if they bear some relationship to acts for which a plaintiff has made a timely charge.[22]

Applying these rules to Plaintiff's claims of disparate treatment on the basis of her age and retaliation, the Court finds that only discrete acts of disparate treatment and retaliation falling within the 300-day filing period are now timely.  Plaintiff filed her charge of discrimination with the EEOC on February 17, 2006.  Therefore, only alleged discriminatory acts occurring within 300 days of that filing date are actionable, meaning any alleged act after April 23, 2005.  Any other alleged act of disparate treatment or retaliation occurring prior to that date is time-barred.

---

[18] *Id*. at 114.

[19] *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 110 (2002).

[20] *Id*. ("While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable").

[21] *Id*.

[22] *Id*. at 113.

Of all the discriminatory acts Plaintiff has alleged, only the denial of her travel request on May 23, 2005, occurred within the 300-day filing period, and so only that event is actionable. All of the other acts dating back to 2003 which form the basis for Plaintiff's Complaint are time-barred as to her counts of disparate treatment and retaliation. Therefore, the Court will limit its consideration of Plaintiff's allegations of disparate treatment and retaliation to that single event. This is not to say that Plaintiff cannot refer to prior acts outside the filing period as background evidence in support of her timely claims.[23] Likewise, "[t]he existence of past acts and the employee's prior knowledge of their occurrence... does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."[24]

Plaintiff's claim for hostile work environment requires a different timeliness analysis. Hostile environment claims involve repeated conduct rather than discrete acts, that when taken together constitute a single "unlawful employment practice."[25] As a result, the alleged practice does not occur or happen on a single day.[26] Therefore, the employee's charge must come within 300 days of "any act that is part of the hostile work environment."[27] In the case at bar, Plaintiff claims that harassment constituting a hostile work environment began with the tenure of

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 115 (citing 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 348-349 (3d ed.1996)).

[26] *Id.* ("It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own").

[27] *Id.* at 118.

Kenworthy in 2002 and continued until the denial of her travel request and her resignation in May 2005. Because the denial of her travel request, one of the alleged acts, occurred within 300 days of her EEOC charge, all of the events alleged by Plaintiff in making out her hostile work environment claim are actionable.

Having considered the timeliness of each of Plaintiff's claims, the Court will now analyze each allegation in turn: disparate treatment, hostile environment, and retaliation.

## II. Disparate Treatment on the Basis of Age

"A plaintiff who brings a claim under [the ADEA] must prove that age was a determining factor in the adverse action that the employer took against him or her."[28] In order to make out a *prima facie* case of age discrimination under the ADEA, Plaintiff must prove (1) that she was at least 40 years old at the time of the alleged discrimination, (2) that she was subjected to an adverse employment action, (3) that she was otherwise qualified for the position, and (4) that she was replaced by a younger worker.[29] The parties dispute whether Plaintiff can prove the second element, namely, that she was subjected to an adverse employment action. "An adverse employment action is a materially adverse change in the terms or conditions of employment because of the employer's conduct."[30] It is undisputed that Plaintiff was not dismissed but resigned her position on May 27, 2005. As a result, the question presented is whether Plaintiff was constructively discharged. The Court finds that she was not.

---

[28] *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993).

[29] *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F. 3d 544, 547 (6th Cir. 2004).

[30] *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 n. 1 (6th Cir. 2002).

## A.   Constructive Discharge

To demonstrate a constructive discharge, Plaintiff must show first that the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and second that the employer did so with discriminatory intent to force the employee to quit."[31]  A plaintiff must also establish "other aggravating factors," demonstrating a continuous and severe pattern of discrimination.[32]  A constructive discharge claim, which rests on the employee's subjective impression that he or she was embarrassed or humiliated, will not survive.[33] Furthermore, the manner in which an employer supervised the employee including criticizing job performance or assigning job duties normally is insufficient to establish constructive discharge as a matter of law.[34]

In determining whether a reasonable person would have felt compelled to resign, the Sixth Circuit considers the following factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued

---

[31] *Logan v. Denny's, Inc.*, 259 F.3d 558, 568 -569 (6th Cir. 2001) (citing *Moore v. KUKA Welding Sys.,* 171 F.3d 1073, 1080 (6th Cir.1999)).

[32] *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir. 1987).

[33] *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 515 (6th Cir. 1991); *see also Rushton v. City of Warren*, 90 Fed. Appx. 912, 918 (6th Cir. 2004).

[34] *Smith v. Henderson*, 376 F.3d 529, 534 (6th Cir. 2004); see also *Peecook v. Northwestern Nat. Ins. Group*, 1998 WL 476245, *4 (6th Cir. 1998).

employment on terms less favorable than the employee's former status.[35] The consideration of these factors will vary depending on the facts of a given case; however, it appears to the Court that only the sixth factor is relevant to the facts presented in the case at bar. Because only Defendant's denial of her travel request fell within the 300-day filing period, the Court must focus its analysis on this single event to determine whether Plaintiff was constructively discharged.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that she has failed to present evidence from which a jury could find that she was constructively discharged. The City's sick leave policy, City policy PM 46-03, states

> An employee who is receiving sick leave benefits is required to report his/her condition and convalescent location to his/her designated supervisor in accordance with the employee's Division rules and regulations. Required reporting will continue unless alternate instructions are given by the employee's designated supervisor. The convalescent location will be the employee's residence or other location approved by the employee's designated supervisor in accordance with the employee's Division rules and regulations.[36]

The same sick leave policy also provided, "The City maintains control of this employee benefit and the enforcement of the provisions of this policy. The City may... [a]dminister disciplinary action based on a given occasion, incident, frequency, or pattern of abuse... and [v]erify the employee's convalescent location."[37]

The record shows that Plaintiff emailed Gray on May 23, 2005, to report her

---

[35] *Logan*, 259 F.3d at 569 (adopting the Fifth Circuit's criteria set forth in *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

[36] Def.'s Mot. Summ. J., ex. G, 5.

[37] *Id*. at 2.

convalescent locations as required by City policy.[38] The same day Gray responded by email to Plaintiff that City policy PM 46-03 required pre-approval of a change of convalescent location while Plaintiff was on medical leave. Gray explained that Plaintiff did not indicate that the proposed locations were medically necessary or related to her medical condition. Therefore, Gray denied her request. Gray further warned that any violation of the City convalescent policy would lead to more disciplinary action. The record also shows that Plaintiff was aware of the City's convalescent location policy for employees on medical leave due to the fact that she had been disciplined in November 2004 for traveling to an IAFN conference without prior approval.

In light of these facts, Plaintiff cannot establish that a reasonable employee would find this denial of her travel request to be an intolerable working condition. Plaintiff does not argue that the City misapplied or selectively applied its sick leave policy in her case or unreasonably required her to remain at her convalescent location. The clear terms of the policy vests the City with the authority to administer the policy including the right to discipline employees who may be abusing sick leave and the right to verify the employee's convalescent location. The employee's convalescent location is defined as "the employee's residence or other location *approved* by the employee's designated supervisor" (emphasis added). By May 2005, it appears that Plaintiff had been on intermittent sick leave since July 2004 and continuous sick leave since October 2004. Plaintiff's letter of resignation simply describes the denial of her request as part of a "routine and continued hostile environment directed toward me" by her supervisors. Nowhere else does Plaintiff allege that the denial of her travel request itself was improper.

---

[38] Plaintiff was planning to travel to a wedding in Columbus, Mississippi on May 28, and to San Francisco and Calistoga, California during the weeks of May 30 and June 6.

Therefore, as a matter of law, the denial of travel request which precipitated her resignation was not such an intolerable act that a reasonable employee would feel compelled to resign.

It is true that Plaintiff claims that her constructive discharge was the culmination of years of harassment from various supervisors. For the reasons discussed above, those events standing alone are now untimely as discrete acts of discrimination because they fall outside of the 300-day filing period. However, even if the Court expanded its constructive discharge analysis to include those events and to consider their cumulative effect, it still cannot be said that Plaintiff's working conditions were so intolerable that a reasonable employee would be forced to resign. First and foremost, the events Plaintiff cites are largely actions taken in the normal course of supervising an employee and of a kind which are insufficient to establish a constructive discharge as a matter of law in this Circuit.[39] More importantly, Plaintiff has adduced no evidence that any act was taken deliberately for some improper purpose, let alone to discriminate against Plaintiff on the basis of her age.

Furthermore, some time had passed since many of the on-the-job issues recited by Plaintiff had occurred. The Sixth Circuit has held that "delay rebuts any inference that [the employee] felt compelled to resign because of the alleged harassment [s]he felt by h[er] supervisors and defeats h[er] claim of constructive discharge."[40] By the time of her resignation in May 2005, Plaintiff's problems with Kenworthy and Mitchell dated back almost two years. Both supervisors were no longer with the City. Since Gray had become Deputy Director in

---

[39] *See Smith*, 376 F.3d at 534.

[40] *Coffey v. Chattanooga-Hamilton County Hosp. Authority*, 1999 WL 824870, *3 (6th Cir. 1999).

January 2004, Plaintiff had only had one prior problem with Gray, a reprimand for Plaintiff's failure to address the inappropriate behavior of a MSARC staff member, and that came in February 2004. Thus, prior to Gray's denial of her travel request in May 2005, it had been nearly sixteen months since Plaintiff had received direct discipline from Gray. As for then-MSARC manager Coffey, Plaintiff complains of various instances where she felt harassed by Coffey including two disciplinary hearings. Most of Plaintiff's complaints about Coffey can fairly be characterized as general supervisory conduct, which is insufficient to show constructive discharge. Plaintiff does not allege that any of Coffey's actions were outside of the scope of City policy or procedure. Of the two hearings initiated by Coffey, one resulted in a finding that Plaintiff had violated the City's sick leave policy, which Plaintiff chose not to appeal. The other resulted in a finding that Plaintiff had not violated other areas of City policy. On the whole, these events are scattered over a period of years and involve many different supervisors and managers, most of whom Plaintiff outlasted as an employee of the City. Therefore, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that a reasonable juror could not find that Plaintiff was constructively discharged.

Even if Plaintiff could make this first showing to establish constructive discharge, the Court holds that she would be unable to make her second showing that Defendant acted with discriminatory intent to force Plaintiff to resign. There is absolutely no evidence in the record that Defendant discriminated against Plaintiff on the basis of her age. Plaintiff can cite nothing to support her contention that the City tried to force her to resign because of her age. Plaintiff makes much of the fact that Rachel Copeland, the interim coordinator of nursing services who

assumed the job after Plaintiff's resignation, was younger than she.[41]  While this is indirect proof

of age discrimination and one element in making out a *prima facie* case for age discrimination,

this fact alone is insufficient to demonstrate that Defendant acted with the intent to force Plaintiff

to resign on account of her age.  To prove constructive discharge, Plaintiff must point to

aggravating factors, something more concrete than the fact that her interim replacement was

younger or even received better compensation.[42]  Moreover, it is also undisputed that Plaintiff's

permanent replacement at MSARC was actually older than Plaintiff.  Therefore, the Court

concludes that a reasonable juror could not find that Defendant acted with the discriminatory

intent to force Plaintiff to resign because of her age.

The Court finds that Plaintiff cannot make out a *prima facie* case for disparate treatment

age discrimination under the ADEA because she cannot show as a matter of law that she suffered

an adverse employment action, that is, that she was constructively discharged.  As a result, there

is no genuine issue of material fact, and Defendant is entitled judgment as a matter of law as to

this count.

### *III. Hostile Work Environment*

The Sixth Circuit was the first of the federal Courts of Appeal to permit a hostile work

environment claim under the ADEA.  In order to make out such a claim, the employee must

show: (1) the employee is forty years old or older; (2) the employee was subjected to

---

[41] Plaintiff also alleges that Copeland received a larger salary, permission to travel to IAFN conferences and "more support" from Defendant.

[42] Defendant disputes whether the interim coordinator can even be considered Plaintiff's replacement under the circumstances.

harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.[43]  In determining whether a hostile work environment exists, the Court must look to "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[44] Because a hostile work environment claim is made up of a series of separate acts, the Court must consider all of the acts falling within the entire time period of the hostile environment, not just acts that occurred within 300 days of Plaintiff's EEOC charge.[45]  In this case Plaintiff claims that her workplace harassment began when Kenworthy became MSARC manager in 2002. Therefore, the Court must consider all of the allegedly harassing events going back to 2002.

The Court finds that Plaintiff has failed to make out her *prima facie* case as a matter of law as to the second and third elements of the claim.   First, Plaintiff has proffered no evidence that she was subjected to any harassment at any time while employed with Defendant based on her age.  Plaintiff argues that she was the victim of harassment or "targeting" yet does not address how she was targeted on the basis of her age.  Of all the incidents cited by Plaintiff, none involved so much as a remark about age or evidenced a discriminatory intent on the basis of age on the part of any supervisor with whom Plaintiff interacted.  In short, there is no evidence from

---

[43] *Crawford v. Medina General Hospital*, 96 F.3d 830 (6th Cir. 1996).

[44] *Morgan*, 536 U.S. at 116.

[45] *Id*. at 117.

which a reasonable juror could conclude that Plaintiff was harassed on the basis of her age. As a result, Plaintiff cannot as a matter of law prove the second element of her case for hostile work environment.

Likewise, even assuming that the conduct of which Plaintiff complains did constitute aged-based harassment, Plaintiff has failed to adduce any evidence that the alleged harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment. It is true that Plaintiff has presented medical evidence that the demands of her work had an effect on her health. However, there is no question that Plaintiff's position as nursing coordinator and the nature of her work at MSARC was difficult and stressful. The incidents of harassment Plaintiff cites largely involve the supervision of Plaintiff's work, the enforcement of City policy, and perhaps personality conflicts with peers and supervisors. Despite Plaintiff's subjective perceptions, these various episodes were "neither severe nor pervasive enough to create a work environment that could be described objectively as hostile or abusive."[46] Therefore, the Court holds that Plaintiff cannot prove the third element of her *prima facie* case.

Having failed to establish that the alleged harassment was due to her age or was objectively hostile and abusive, Plaintiff's claim for hostile work environment must fail as a matter of law. Therefore, Defendant is granted summary judgment as to this count.[47]

---

[46] *Peecook*,1998 WL 476245, * 3.

[47] Defendant has argued that it is entitled to the *Faragher-Ellerth* affirmative defense, an argument for which Plaintiff has offered no response. In two opinions decided on the same day, the Supreme Court created an affirmative defense to limit the liability of employers for claims of hostile work environment in the context of sexual harassment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998). However, the Court notes

### III. Retaliation Claim

The Court also concludes that Defendant is entitled to summary judgment as to Plaintiff's retaliation claim under the ADEA. In order to make out a *prima facie* case of retaliation under the ADEA, Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that Defendant had knowledge of her protected activity; (3) that Defendant took an adverse employment action against her; and (4) that there was causal connection between the protected activity and the adverse employment action.[48]

According to the Complaint, Plaintiff alleges that Defendant retaliated against her by intimidating her and subjecting her to a series of merit-less disciplinary actions for the purpose of retaliating against her after she engaged in protected activity. Plaintiff argues that her complaints to her supervisors about incidents of harassment including the Helmon episode were protected activities. However, the Court disagrees and concludes that Plaintiff cannot establish the first prong of her *prima facie* case, that her complaints to Defendant amounted to protected activity under the ADEA.

The Sixth Circuit has held that "Title VII's anti-retaliation provision is similar in relevant respects to the ADEA's anti-retaliation provision, and that it is therefore appropriate to look to cases construing Title VII as a source of authority for interpreting the ADEA's anti-retaliation

---

that the Sixth Circuit has not applied the *Faragher-Ellerth* affirmative defense to hostile work environment claims in the context of age discrimination. Having already found that Plaintiff cannot establish the second or third elements of her *prima facie* case, the Court declines to consider the application of the *Faragher-Ellerth* affirmative defense in the context of the ADEA.

[48] *Fox v. Eagle Distributing Co., Inc.*, 510 F.3d 587, 591 (6th Cir. 2007).

clause."[49]  Therefore, the Court will apply the protected activity analysis under Title VII's anti-retaliation provision to Plaintiff's ADEA retaliation claim.

As with Title VII, protected activity may include either participation in any proceeding under the ADEA (the so-called "participation clause") or opposition to a practice declared discriminatory under the ADEA (the "opposition clause").  First, to establish a claim of retaliation under the participation clause, Plaintiff must make a *prima facie* case by showing that Defendants took an adverse action against her because she filed a claim with the EEOC.[50]  Here Plaintiff's oral and written complaints about her supervisors and Helmon are not protected activity for purposes of the "participation clause."[51]  Therefore, Plaintiff cannot show that she engaged in protected activity by participating in a proceeding under the ADEA.

Likewise, Plaintiff's complaints do not meet the requirements for protected activity under the "opposition clause."  As with Title VII, an employee is protected against employer retaliation under the ADEA for opposing any practice that the employee reasonably believes to be a violation of ADEA, the so-called "opposition clause."[52]  The Equal Employment Opportunity Commission ("EEOC") has identified a number of examples of "opposing" conduct which are protected by Title VII, and by extension the ADEA, including complaining to anyone

---

[49] *Id.* (citing *Wathen v. Gen. Elec.*, 115 F.3d 400, 404, n. 6 (6th Cir. 1997).

[50] *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 581(6th Cir. 2000) (interpreting Title VII's anti-retaliation provision).

[51] Plaintiff did file an EEOC charge against Defendant on February 17, 2006, that is, *after* Defendant's alleged retaliatory conduct.  Clearly, in order for Plaintiff to state a claim for retaliation under the participation clause, the filing of his EEOC charge must occur *before* the alleged retaliation.

[52] *Id.* at 579-80.

(management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under the ADEA; and opposing unlawful acts by persons other than the employer, e.g., former employers, union, and co-workers.[53]  The EEOC has qualified the scope of the opposition clause by noting that the manner of opposition must be reasonable, and that the opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful."[54]  In other words, a violation of the ADEA's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.[55]  In this Circuit, a plaintiff is required to establish active, consistent "opposing" activities to warrant protection against retaliation.[56]

Applying these Title VII standards to Plaintiff's ADEA allegations, it is clear that Plaintiff's complaints did not qualify as "opposition" under the ADEA.  First, it does appear that Plaintiff complained to various supervisors about the Helmon incident, including Kenworthy, McCloy, and Mitchell.  Plaintiff has averred that Mitchell informed her and other MSARC staff members that he did not wish to receive any more complaints from MSARC staff.  However, Plaintiff has failed to adduce any evidence that she was opposing any acts which are unlawful

---

[53] *Id.* (citing *EEOC Compliance Manual,* (CCH) ¶ 8006).

[54] *Id.*

[55] *Id.*

[56] *Bell v. Safety Grooving & Grinding, LP*, 107 Fed. Appx. 607, 610 (6th Cir. 2004) (comparing *Johnson* where plaintiff engaged in "opposing" conduct by sending numerous letters to his employer objecting to its discriminatory hiring practices "as a whole" to *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989), where plaintiff did not engage in "opposition" by sending only one letter contesting a single decision to his employer's human resources department).

under the ADEA.  The ADEA makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to the compensation, terms, conditions, or privileges of employment, because of such individual's age."[57]  Plaintiff has not even alleged that her complaints to her supervisors about Helmon so much as mention discrimination on the basis of her age.  There is no evidence in the record that Helmon's confrontation with Plaintiff was motivated or concerned Plaintiff's age.  There is no evidence that Plaintiff complained to her supervisors that Helmon's harassing behavior on this occasion was motivated by Plaintiff's age.  Her complaints to her supervisors about Helmon cannot be considered opposition to an unlawful practice under the ADEA.  Plaintiff's complaints to Mitchell about Kensworthy and McCoy also fail to constitute opposing activity for the same reasons.  There is no evidence that Plaintiff complained that her supervisors failed to take action against Helmon because of Plaintiff's age.  In fact, nowhere does Plaintiff allege that she complained of age discrimination as part of any complaint to her supervisors stemming from the Helmon episode or at any other time while she was employed with Defendant.  In short, there is no evidence from which a reasonable juror could conclude that Plaintiff engaged in some form of protected activity that would form the basis for her retaliation claim.  Therefore, the Court finds that Defendant is entitled to summary judgment as to this count.

Even if Plaintiff could establish that her complaints satisfied the "opposition clause" thereby proving the first element of her retaliation claim, Plaintiff could not prove the third element, namely, that Defendant took a materially adverse action against her.  For the reasons discussed above, the Court has concluded that Plaintiff resigned her position voluntarily and as a

---

[57] 29 U.S.C. § 623(a)(1).

matter of law, Plaintiff cannot show that she was constructively discharged. Therefore, Plaintiff has failed to allege that Defendant took a materially adverse action against her as a result of any protected activity.

Construing the evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff cannot establish that she engaged in protected activity or that Defendant took materially adverse action against her. As a result, Defendant is entitled to summary judgment as to Plaintiff's claim of retaliation pursuant to the ADEA.

## CONCLUSION

Viewing all of the evidence in the record in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to create a genuine issue of material fact as to each of her claims under the ADEA: disparate treatment, hostile work environment, and retaliation. Therefore, Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: January 6th, 2009.